```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN
```

CERTAIN UNDERWRITERS AT LLOYD'S,         )
LONDON SUBSCRIBING TO POLICY NO. GL-     )
2918-028,                                )
                                         )
          Plaintiffs,                    )
                                         )
     v.                                  )
                                         )
WENHAVEN, INC., and PETER KUMPITCH,      )
                                         )
          Defendants.                    )
                                         )   Civil No. 2014-03
                                         )

**ATTORNEYS:**

**Mark Wilczynski, Esq.**
Law Office of Wilczynski & Garten, P.C.
St. Thomas, U.S.V.I.
    *For the plaintiffs,*

**George Hunter Logan, Esq.**
Nichols Newman Logan
St. Croix, U.S.V.I.
    *For the defendants.*

<u>ORDER</u>

Before the Court are the motions of Wenhaven, Inc., and Peter Kumpitch to dismiss this matter for lack of subject-matter jurisdiction.

### I. <u>FACTUAL AND PROCEDURAL HISTORY</u>

Peter Kumpitch is president and shareholder of defendant Wenhaven, Inc., a Virgin Islands Corporation. Wenhaven, Inc., is a lessee of commercial property, which includes Wendy's

restaurant. The restaurant is owned by Wenhaven, Inc. Wenhaven, Inc. and Peter Kumpitch (collectively "Wenhaven") obtained a commercial general liability insurance policy on October 13, 2011 (the "policy"). The policy was underwritten by certain underwriters at Lloyd's of London ("Lloyd's"). The policy covered certain claims against Wenhaven for bodily injury. The policy specifically excluded coverage of the cost of any suit against Wenhaven seeking damages for bodily injury or property damage to which the policy did not apply.

Clydella Stapleton ("Stapleton") was an employee at Wendy's restaurant. On October 13, 2011, Wenhaven terminated Stapleton's employment with Wendy's. Thereafter, on March 30, 2012, Stapleton filed suit against Wenhaven in the St. Croix division of this Court, alleging violation of the Fair Labor Standards Act ("FLSA"); violation of the Virgin Islands Fair Labor Standards Act ("VIFLSA"); wrongful termination; and defamation (the "St. Croix Action"). In the St. Croix Action, Stapleton alleges that Wenhaven failed to pay Stapleton for overtime and holidays, and that Wenhaven falsely accused Stapleton of mishandling money.

Lloyd's reviewed Stapleton's Complaint in the St. Croix Action, and determined that the St. Croix Action fell outside of the policy coverage. Lloyd's denied coverage and denied defense

of the action in a letter to Wenhaven on April 25, 2012. Wenhaven hired an attorney to defend them in the St. Croix Action.

On January 25, 2013, Wenhaven wrote to Lloyd's in order to request reconsideration of the denial of defense and denial of coverage.  Following investigation, Lloyd's again denied the tender of a defense and denied coverage in the St. Croix Action.

Stapleton later filed a second amended complaint against Wenhaven in the St. Croix Action.  The second amended complaint alleged a violation of the FLSA, a violation of the VIFLSA, wrongful discharge, defamation, and violations of the duties of good faith and fair dealing. On review of the second amended complaint, Lloyd's accepted the defense of Wenhaven under a reservation of rights.[1]

On January 10, 2014, Lloyd's filed the instant action against the defendants (the "St. Thomas Action").  In its complaint, Lloyd's seeks a declaratory judgment declaring that it has no duty to defend Wenhaven in the St. Croix Action. Lloyd's also seeks a declaration that it has no duty to indemnify Wenhaven for any costs incurred as a result of the St. Croix Action.

---

[1] Lloyd's agreed to defend Wenhaven in the St. Croix Action, while maintaining that no coverage or defense was owed to Wenhaven under the insurance policy.

Thereafter, on February 14, 2014, Wenhaven filed a motion to dismiss for lack of subject-matter jurisdiction.  In its motion, Wenhaven asserts that Lloyd's has failed to show complete diversity.  Specifically, Wenhaven argues that Lloyd's did not include the names of each entity underwriting the policy, and that therefore it was impossible to determine the citizenship of each underwriter of the policy. Wenhaven also argues that Lloyd's has not satisfied the amount in controversy requirement for each underwriter.

On March 7, 2014, Lloyd's filed an amended complaint in the St. Thomas Action.  The amended complaint states that the names of the particular entities subscribing to the policy at issue are: Amlin P.L.C. ("Amlin"), incorporated under the laws of England with its principal place of business in London, England; The Faraday Group ("Faraday"), incorporated under the laws of England with its principal place of business in London, England; S.A. Meacock and Company, Limited, incorporated under the laws of England with its principal place of business in London, England; and Catlin Group Limited ("Catlin"), incorporated under the laws of the British Overseas Territory of Bermuda, with its principal place of business in Bermuda.

Wenhaven renewed its motions to dismiss on March 17, 2014. Wenhaven asserts that the annual report of Catlin indicates that

it is a holding company, not an operating company, and therefore cannot be a subscriber to the policy.  Wenhaven also states that Faraday is an informal grouping of two separate entities, one an underwriting syndicate, and is not itself an underwriting entity, as evidenced by Faraday's website. Wenhaven claims that Amlin is not an operating company either, but is instead a holding company and as such cannot subscribe to the policy, based upon Amlin's annual reports. Wenhaven additionally alleges that the managing agent for the policy is Red Hook Agencies, Inc., domiciled in the Virgin Islands.

Finally, Wenhaven also argues that the amended complaint fails to show that any single subscribing entity meets the amount in controversy requirement needed for diversity jurisdiction.

## II. DISCUSSION

A Rule 12(b)(1) motion may be treated either as a facial or a factual challenge to the court's subject-matter jurisdiction. *Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). A factual challenge may occur only after the allegations of the complaint have been controverted. *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 892 n. 17 (3d Cir. 1977). In considering a facial challenge to subject-matter jurisdiction under Rule 12(b)(1), all material allegations in the complaint

are taken as true. *Id.* at 891–92; *see also Taliaferro v. Darby Township. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (summarizing the standard for facial attacks under Rule 12(b)(1) as "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court"). In reviewing a factual attack, the court may consider evidence outside the pleadings. *Gould Electronics*, 220 F.3d at 176.

### III. <u>ANALYSIS</u>

Federal district courts have original jurisdiction over civil actions between citizens of different states, provided the amount in controversy is greater than $75,000. 28 U.S.C. § 1332. The Supreme Court has "interpreted the diversity statute to require 'complete diversity' of citizenship." *C.T. Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990). That means "every plaintiff must be of diverse state citizenship from every defendant." *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006).

"The general rule undoubtedly is that federal courts must look to the individuals being represented rather than their collective representative to determine whether diversity of citizenship exists. *See Northern Trust Co. v. Bunge Corp.*, 899 F.2d 591, 594 (7th Cir. 1990) (finding that a representative of a group of shareholders took on the citizenship, for

jurisdictional purposes, of each shareholder represented)." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 931 (2d Cir. 1998).

"The party asserting diversity jurisdiction bears the burden of proof. A party generally meets this burden by proving diversity of citizenship by a preponderance of the evidence." *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).

Here, Wenhaven argues that Lloyd's assertions regarding the identity of the entities underwriting the policy are, in fact, incorrect. Specifically, Wenhaven contends that Amlin, Catlin, and Faraday are not underwriting names, but instead are Lloyd's syndicates or representatives of Lloyd's syndicates. In support of this claim, Wenhaven has provided the annual reports of Catlin and Amlin, and a screenshot of a website identified as Faraday's. Where a defendant's motion argues that the allegations in the complaint, on which jurisdiction depends, are not true as a matter of fact, the motion is a factual challenge to the Court's subject-matter jurisdiction. *See Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 300 n.4 (3d Cir. 2002) *overruled on other grounds by Animal Sci. Products, Inc. v. China Minmetals Corp.*, 654 F.3d 293 (3d Cir. 2011), *as amended* (Oct. 7, 2011).

> When a district court considers a factual challenge to subject matter jurisdiction, the court accords the plaintiff's allegations no presumption of truth. The plaintiff must either prove the truth of the necessary jurisdictional facts or stand by while the court evaluates those allegations in the same way a jury would evaluate those facts as part of the plaintiff's case on the merits. In a factual attack, the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings.

*S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 343 (3d Cir. 2012). A motion to dismiss under Rule 12(b)(1) may, in essence, "be supported by whatever documents might be necessary to resolve the jurisdictional problem[.]" *Barnhart v. United States*, 884 F.2d 295, 296 (7th Cir. 1989).

Once evidence that the Court lacks jurisdiction is proffered, "the presumption of correctness that [the Court] accord[s] to a complaint's allegations falls away, and the plaintiff bears the burden of coming forward with competent proof" that the Court has jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)(internal quotation and citation omitted).

The Court believes that a brief overview of the structure of Lloyd's is necessary in order to fully consider whether there is diversity of citizenship here. The United States Court of Appeals for the Third Circuit has commented on the structure of

Lloyds. In *Chemical Leaman Tank Lines, Inc. v. Aetna Casualty & Surety Co.*, 177 F.3d 210 (3d Cir. 1999), the Circuit instructed the following:

> Lloyd's is not an insurance company, but rather is an exchange or market where various individuals or groups bid on the right to insure a given risk. Lloyd's takes no part in the business of underwriting; policies are underwritten at Lloyd's and not by Lloyd's.
>
> An individual must pay a membership fee, keep certain deposits at Lloyd's, and meet several specific requirements, including possession of a certain degree of wealth, in order to have access to the Lloyd's insurance market. Once they have joined the market, these individuals may underwrite risks in this market. The individuals are alternatively referred to as members, underwriters, or names. In order to increase the efficiency of underwriting risks and to combine the resources of numerous individuals, names form groups called syndicates. However, syndicates are not legal entities. Syndicates do not assume liability or underwrite risks; names do. Each name has unlimited personal liability yet only to the extent of the percentage share of the risk that he or she has assumed. The holders of Lloyd's policies thus enter into contractual relationships with specific names who have subscribed to the policy for the portion of the risk each name has agreed to underwrite.
>
> Within each syndicate, a Managing Agent is responsible for the underwriting and management of each individual's investments. The Managing Agent receives this authority through contracts with each individual. The Managing Agent, typically a partnership or limited company, appoints one of its employees to serve as the Active Underwriter for the syndicate. The Active Underwriter has the authority to bind all the

> individuals in the syndicate. The Active Underwriter selects the risks to underwrite, determines the conditions to which a risk will be subject, assigns each individual in the syndicate a percentage of the risk, and decides whether to pay a particular claim.

*Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 221-22 (3d Cir. 1999).

Here, Lloyd's acknowledges that "[u]nderwriters are generally syndicates consisting of privately owned companies authorized to insure risks at Lloyd's, London." (Amend. Compl. ¶ 1, ECF No. 11.) That is, the amended complaint recognizes that syndicates are different than the underwriting entities themselves. The underwriting entities actually insure the risks. The syndicates do not. *See Chem. Leaman*, 177 F.3d at 221-22. Rather, syndicates are simply associations of underwriters established to simplify the underwriting process. *Id*.

This distinction between "syndicates" and "names" is of great importance. Lloyd's syndicates are not legal entities. *Id.* at 221. As syndicates have no independent legal identity, the majority of circuit courts to have considered the citizenship of subscribers to Lloyd's of London's insurance policies have found that where Lloyd's is suing in a representative capacity, rather than a specific name suing as an individual, each name must be diverse for diversity jurisdiction to be invoked. *See, e.g.*,

*Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1092 (11th Cir. 2010); *E.R. Squibb*, 160 F.3d at 931-32; *Indiana Gas Co.*, 141 F.3d at 319. *But see Certain Interested Underwriters at Lloyd's , London, England v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994).

In this case, Wenhaven, Inc. and Kumpitch are both Virgin Islands citizens. (Amend. Compl. ¶¶ 2,3, ECF No. 11; Reply to Opp., ECF No.17.)  As such, in order for there to be complete diversity, the plaintiffs cannot include any Virgin Islands citizens. Lloyd's has provided the names of four entities which it states are the underwriters of the policy.  Lloyd's claims that each of these entities is incorporated and has its principal place of business outside of the Virgin Islands.

Although Lloyd's calls the four entities in the amended complaint "names" in its amended complaint, it is unclear that that is an accurate characterization.  In Lloyd's subsequent opposition to the instant motions to dismiss, Lloyd's conflates "names" with "syndicates." (ECF No. 14 ("Defendants claim that two of the entities subscribing to risk under the Policy listed by Underwriters cannot be subscribing *syndicates* to the Policy[.]" (emphasis added).) The position advanced by Lloyd's gives the Court some pause.

The Court has also reviewed Wenhaven's submissions. The screen-capture of the Faraday Group website states that "[t]he Faraday Group comprises two risk bearing entities, Faraday Re, a AA+ rated London market reinsurance company, and Faraday Syndicate 435 at Lloyd's[.]" (ECF No. 12-1.) The precise legal status of Faraday Group - whether it is a corporation like Catlin or Amlin, or simply a business association – is not entirely clear. Nothing on the submitted document contains a clear indication of corporate status; to the contrary, the plain language suggests that it is simply a business association. Wenhaven argues that the Faraday Group is just that, an unincorporated business entity. Lloyd's does not refute this allegation, but instead insists that Wenhaven has not proven that either Faraday Re or Faraday Syndicate 435 would defeat diversity. That is not Wenhaven's burden, however. Wenhaven need only put on evidence which controverts the jurisidictional allegations in the amended complaint. *See Apex Digital, Inc.*, 572 F.3d at 444. In providing evidence that tends to show there may be several plaintiffs whose citizenship is unknown, Wenhaven has done so.

As Wenhaven has put forth evidence controverting the Court's jurisdiction in this matter, the burden of proof now shifts to Lloyd's. *Apex Digital, Inc.*, 572 F.3d at 444. In

response, Lloyd's has not adduced any record evidence that supports a finding that there is subject-matter jurisdiction in this case.  Instead, Lloyd's continues to rest on its allegations in the Amended Complaint that the four entities named therein are "underwriters" of the policy. Considering Lloyd's bare assertions against the evidence submitted by Wenhaven, the Court is not persuaded that Lloyd's has met its burden of proof on the issue of complete diversity of all names underwriting the policy.

As Lloyd's has failed to show complete diversity of all names in this matter, the Court only has jurisdiction over this matter if the circumstances allow the Court to consider the citizenship of the representative (Lloyd's or the syndicates) rather than the represented (the names). There are three general circumstances in which the Court may consider the citizenship of representatives rather than the represented for purposes of the complete diversity rule: (1) corporations, whose corporate citizenship is the one considered when determining diversity of parties; (2) trusts, whose citizenship may sometimes be determined by the citizenship of the trustees, rather than by all trustees and beneficiaries; and (3) class actions, which require only minimal diversity. *See E.R. Squibb*, 160 F.3d at 931.

When one party is a corporation, it is the corporation's citizenship that matters, not its individual shareholders'. *Id.;* see 28 U.S.C. § 1332 (defining corporate citizenship). Corporations have independent legal identities, separate from shareholders and subsidiary corporations. *See, e.g.*, *Lowell Staats Min. Co., Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1265 (10th Cir. 1989)(stating that each corporation is treated as an independent legal entity unless the corporate veil is pierced). Associations of persons, including those created or protected by law, that are not corporations cannot be considered separately from its membership. *R.H. Bouligny, Inc. v. United Steelworkers of Am., AFL-CIO*, 336 F.2d 160, 161-62 (4th Cir. 1964), *aff'd*, 382 U.S. 145 (1965) ("This court does not hold that either a voluntary association of persons, or an association into a body politic, created by law, is a citizen of a state within the meaning of the Constitution.")(citing to *Great S. Fireproof Hotel Co. v. Jones*, 177 U.S. 449 (1900)).

Lloyd's does not allege that it is a corporation, and thus entitled to use its own citizenship for jurisdictional purposes. In fact, Lloyd's likely could not so argue, as the Third Circuit has said, "Lloyd's is an association that provides the physical premises and the administrative services and staff to enable insurance underwriters to carry on their business. Lloyd's is

*Lloyd's of London v. Wenhaven, Inc., et al.*
Civ. No. 2014-03
Order
Page 15

not an insurance company, but rather is an exchange or market . . . ." *See Chem. Leaman*, 177 F.3d at 221. Lloyd's also does not argue that the syndicates are corporations and, indeed, it could not. Unlike corporations, which have independent legal identities, syndicates are not legal entities. *Chem. Leaman*, 177 F.3d at 221. As both Lloyd's and its syndicates are thus non-corporate business associations, they are not eligible for treatment as a corporation. *See R.H. Bouligny*, 336 F.2d at 161-62.

Lloyd's also does not argue that the circumstances in this matter allow it to proceed as a trustee of a trust or as a class action matter. The Court will thus not address those types of representative citizenship for diversity purposes.[2]

In its opposition to the instant motions, Lloyd's asks that the Court grant it leave to amend if the amended complaint is found to be deficient.

---

[2] Where the trustees bring a suit, and the trustees possess the customary powers necessary to hold, manage, and dispose of trust assets, the courts may consider solely the trustees' citizenship. *See Velger v. Carr*, 532 F. App'x 134, 135 n.2 (3d Cir. 2013); *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 201 (3d Cir. 2007). If these particular requirements are not met, the courts consider the citizenship of all trustees and beneficiaries of the trust. *See Velger*, 532 F. App'x at 135 n.2; *Emerald Investors Trust*, 492 F.3d at 203.

A Court may consider a representative's citizenship rather than its members' citizenships where the case is a class action. *See E.R. Squibb*, 160 F.3d at 931-32. In this case, Lloyd's has not pled a class action lawsuit in its Complaint or Amended Complaint.

*Lloyd's of London v. Wenhaven, Inc., et al.*
Civ. No. 2014-03
Order
Page 16

    Where a complaint is subject to dismissal, district courts are instructed to provide the plaintiff with leave to amend even if the plaintiff has not requested such leave. *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). This is true even where a complaint is dismissed for lack of subject-matter jurisdiction. *See Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 887 (3d Cir. 1992)(stating that a district court's finding that the complaint did not allege subject-matter jurisdiction did not preclude granting leave to amend). The only exception to this general rule is where the district court finds that amendment would be inequitable or futile. *See Phillips*, 525 F.3d at 245. The Court does not find anything on the record which indicates that amendment in this matter would be futile.

    The premises considered, it is hereby

    **ORDERED** that the defendants' motions to **DISMISS** are **GRANTED**; it is further

    **ORDERED** that the plaintiffs shall, to the extent they wish to do so, file a second amended complaint no later than 3:00 PM on October 3, 2014.

                                      S\_____
                                          **CURTIS V. GÓMEZ**
                                          **District Judge**